UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| | |
|---|---|
| **CASE NO.:** CV 2:18-07948 SJO (AGRx) | **DATE:** January 10, 2019 |
| **TITLE:** Aaron Linsky v. Lockheed Martin Corp. | |

========================================================================

**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz
Courtroom Clerk

Not Present
Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**

Not Present

**COUNSEL PRESENT FOR DEFENDANT:**

Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFF'S MOTION TO REMAND** [Docket No. 9]

This matter is before the Court on Plaintiff Aaron Linsky's ("Plaintiff") Motion for Order Remanding Action to State Court ("Motion"), filed October 15, 2018. Defendant Lockheed Martin Corp. ("Lockheed" or "Defendant") opposed the Motion ("Opposition") on October 23, 2018, to which Plaintiff replied on October 30, 2018. The Court found the matter suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, Plaintiff's Motion is **DENIED**.

I.   FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 2018, Plaintiff filed a civil complaint ("Complaint") against Lockheed in Santa Barbara Superior Court in a case captioned *Aaron Linsky v. Lockheed Martin Corp.,*,18CV04035 (Cal. Super. Ct. Aug. 16, 2018). (*See* Notice of Removal ("Notice"), Exh. A ("Complaint"), ECF No. 1-1.) In the Complaint, Plaintiff alleges that Defendants failed to pay him wages for all time worked and terminated him when he ultimately complained about this failure. (Compl. ¶¶ 2-3.)

In his Complaint, Plaintiff alleges the following. Plaintiff was first hired by Defendant in 2005 as an Information Technology ("IT") contractor in the Santa Barbara Focalplane ("SBF") division of Lockheed. (Compl. ¶ 17.) He was made a full-time employee in September 2006 and, in 2010, was moved out of SBF staffing and was placed into the IT department of its parent division, Missile and Fire Control ("MFC"). (Compl. ¶ 17.) As the SBF facility increased in size and IT personnel departed, Plaintiff's responsibilities increased substantially, forcing him to perform work outside of his normal work hours. (Compl. ¶ 23.) On a typical day, Linsky would begin work at around 6:00 a.m. responding to calls and emails from East Coast offices and would continue working until approximately 7:30 p.m. (Compl. ¶ 23.) This resulted in an average of 3 hours per day outside of his official work time and 2-3 additional hours on weekends. (Compl. ¶ 23.) Linsky's boss, Alfredo Zapatero ("Zapatero") was aware of and approved Linsky working overtime, but refused to pay him for work performed at home outside of work hours. (Compl. ¶ 24.)

CASE NO.:   CV 2:18-07948 SJO (AGRx)          DATE:  January 10, 2019

In early 2015, Linsky requested additional help, but was told that the overtime he had been charging on his time card did not justify an additional worker. (Compl. ¶ 25.) In response, Linsky began charging all hours that he had been working, both at home and at his office—approximately 12-14 hours per day. (Compl. ¶ 25.) In May 2015, Zapatero agreed to provide help and instructed Linsky to stop doing any non-essential duties. (Compl. ¶¶ 26-28.) This reduced Linsky's work to little more than basic manual labor, yet still required him to perform work outside of his scheduled work hours. (Compl. ¶ 28.)

As a result of his overtime work, Plaintiff developed serious health issues. (Compl. ¶ 29.) On July 29, 2015, he reported a work injury to the Environmental Safety and Health department at SBF and was sent back to work with restrictions on his physical efforts. (Compl. ¶ 29.) Zapatero was informed of Plaintiff's injury and knew that it was a result of Plaintiff's long days working overtime, yet refused to provide additional assistance to lower his workload. (Compl. ¶ 29.) In October 2015, Plaintiff filed an ethics violation against Zapatero based on a meeting where Linsky overheard Zapatero using inappropriate and derogatory language regarding his work performance. (Compl. ¶ 30.)

Beginning in November 2015, Plaintiff developed medical issues and was advised by his doctor to take time off. (Compl. ¶ 32.) He took 13 days off in December and, despite informing Zapatero that these days were personal injury/sick time, Zapatero input six of them as vacation days. (Compl. ¶ 32.) In 2016, Linsky took short term disability, but stayed in contact with Zapatero and SBF Human Resources, assuring them of his intention to return to work. (Compl. ¶ 33.) On June 20, 2016, Plaintiff emailed Zapatero and Human Resources, asking if his position was still available and informing them of his plan to return to work soon. (Compl. ¶ 33.) On June 27, 2016, a senior staff member at SBF emailed Plaintiff, telling him that once he is able to return to work, they would work with him and his doctor to determine whether his restrictions were able to be accommodated. (Compl. ¶ 34.) Despite this offer, SBF opened a requisition for Linsky's position on July 18, 2016 and cut off all further contact with him. (Compl. ¶ 35.) On August 11, 2016, SBF informed Linsky that the position he had held prior to taking disability leave had been filled. (Comp. ¶ 39.) They also rejected his subsequent request for a comparable position with a medical accommodation. (Compl. ¶ 39.) He was officially terminated on October 13, 2017, yet was not given the entirety of the money owed him in his final check, with Lockheed waiting nearly two months after his termination to provide him with an additional $5,540 he was owed. (Compl. ¶ 42.) This amount did not include the sick leave that was mischarged as vacation time. (Compl. ¶ 42.)

Plaintiff asserts the following causes of action against Defendant: (1) Failure to Pay Wages; (2) Failure to Pay All Wages at Time of Discharge and Penalties; (3) Failure to Provide Rest Periods; (4) Penalties for Failure to Provide an Accurate Itemized Statement; (5) Violation of California's Unfair, Fraudulent, & Unlawful Business Practices Act; and (6) Retaliation in Violation of Public Policy. (*See generally*, Compl.)

**CASE NO.:**  CV 2:18-07948 SJO (AGRx)  **DATE:**  January 10, 2019

The state court action was removed to this Court on September 13, 2018. (Notice of Removal ("Notice"), ECF No. 1.) The present motion seeks to remand this action to Santa Barbara Superior Court.

II. <u>DISCUSSION</u>

    A. <u>Legal Standard for Remand</u>

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). Lack of subject matter jurisdiction may be raised by any party at any time, and it is never waived. *See United States v. Cotton*, 535 U.S. 625, 630 (2002); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1163-64 (9th Cir. 2002).

An action is removable to federal court only if it could have been brought there originally. *See* 28 U.S.C. § 1441(a). The Ninth Circuit has held that courts must "strictly construe the removal statute against removal jurisdiction" and reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citations and internal quotation marks omitted).

Section 1332(a), in turn, provides that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and is between parties with diverse citizenship. 28 U.S.C. § 1332(a). The amount in controversy, for purposes of diversity jurisdiction, is the total "amount at stake in the underlying litigation." *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005). "[I]n assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.' " *Campbell v. Vitran Exp., Inc.*, 471 Fed.Appx. 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002)).

"The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999). The removing party does not need to prove actual facts but rather need only include a "short and plain statement" setting forth "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); Fed.R.Civ.P. 8(a). Where the plaintiff contests the defendant's allegations, "both sides submit proof and the court decides, by a preponderance of

the evidence, whether the amount-in-controversy requirement has been satisfied." *Owens*, 135 S.Ct. at 550.

The preponderance of the evidence standard means the "defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F. 3d 398, 404 (9th Cir. 1996) (emphasis added) (citation omitted). A defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum. *Gaus v. Miles, Inc.*, 980 F. 2d 564, 567 (9th Cir. 1992). In addition to the contents of the removal petition, the court considers "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations. *Valdez v. Allstate Ins. Co.*, 372 F. 3d 1115, 1117 (9th Cir. 2004) (internal quotations omitted); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F. 3d 373, 374 (9th Cir. 1997). A court may also consider supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice. *Cohn v. Petsmart, Inc.*, 281 F. 3d 837, 840 n. 1 (9th Cir. 2002).

    B.    <u>Analysis</u>

Pursuant to 28 U.S.C. § 1332(a), the federal courts have original jurisdiction over state law actions where the amount in controversy exceeds $75,000 and the action is between parties of diverse citizenship. Plaintiff argues that removal was improper because the amount in controversy requiremen was not met. (Mot. 1.) For the reasons below, the Court disagrees and therefore **DENIES** Plaintiff's Motion to Remand.

In the present case, the Complaint does not specify any specific amount of damages, but rather seeks "actual, special, general, consequential, incidental, and/or compensatory damages" as well as "an award of reasonable attorney fees" and "exemplary and punitive damages." (*See generally*, Compl.) Plaintiff's most notable claim, in terms of potential damages, is his sixth cause of action for retaliaion, in which he states that "[a]s a proximate result of Lockheed's retaliation against Plaintiff, he has suffered and continues to suffer substantial losses incurred in earnings, bonuses, deferred compensation and other employment benefits and has suffered and continues to suffer embarrassment, anger, humiliation, frustration and other highly unpleasant mental anguish." (Compl. ¶ 80.) He therefore claims not only emotional distress, but also his lost wages.

At the time of Plaintiff's termination, his annual salary was $110,553 and he received company sponsored benefits valued at more than $15,000 per year.[1] (Declaration of Nicole Ivens ¶¶ 3-4, ECF No. 12-1.) Plaintiff does not dispute this fact, but instead argues that he was not actually

---

[1] Plaintiff also challenged the sufficiency of Defendant's evidentiary support for his salary, however Defendant has since provided the sworn statement of Nicole Evans, an employee with personal knowledge of Plaintiff's salary.

| | |
|---|---|
| **CASE NO.:** CV 2:18-07948 SJO (AGRx) | **DATE:** January 10, 2019 |

being paid his full salary because of his extended unpaid leave of absence due to health issues. (Mot. 8.) He also contends that his medical restrictions and accommodations "would likely have changed Defendant's job responsibilities and time worked, and thus, his salary." (Reply 3.) While it is true that a company may reduce compensation when placing an employee in a new position as a reasonable medical accommodation, they need not do so and Plaintiff has not demonstrated that such a salary reduction would occur in this instance. This is especially true given that Plaintiff requested "reinstatement to his current position or to a comparable position with accommodation for his medical condition." (Compl. ¶ 39.) Because reinstate or placement into a comparable position would likely entail the same or comparable salary, Defendant's use of Linsky's prior compensation of $110,553, plus benefits, is reasonable.

Linsky filed this action on August 16, 2018, 307 days after his termination on October 13, 2017. Had he been employed and paid his normal salary during this period, he would have earned more than $92,000, excluding benefits. This is without the addition of Plaintiff's claim for lost future wages, which would likely extend at least one year from the date this action was filed. *Fritsch v. Swift Transportation Company of Arizona, LLC*, 899 F.3d 785, 793-94 (9th Cir. 2018)(quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018))("[I]f the law entitled [Plaintiff] to recoup those future wages if she prevails, then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them."). Because the diversity requirements are easily met by Plaintiff's lost wages claim alone, the Court need not examine Plaintiff's other requested relief—including attorneys' fees, statutory damages, emotional distress, and punitive damages—all of which would only serve to push the plausible amount in controversy even further beyond the $75,000 minimum.

III.    <u>RULING</u>

In sum, the Court concludes that Defendant has met its burden to show by a preponderance of the evidence that the amount in controversy exceeds $75,000. For this reason, the Court **DENIES** Plaintiff's Motion to Remand.

IT IS SO ORDERED.